1

2

3

4

5

6

7                            UNITED STATES DISTRICT COURT

8                                  DISTRICT OF NEVADA

                                          * * *

9                                           )
      FOUAD DAOU,                           )
10                                          )
                     Plaintiff,             )              2:11-CV-01385-PMP-GWF
11                                          )
       v.                                   )
12                                          )
      RICK A. ABELSON, SOURYA               )
13    ABELSON, NAJWA ABAZAKI,               )              ORDER
      MAYSOUN FLETCHER, and AKRAM H.)
14    ABOLHOSEN,                            )
                                            )
15                   Defendants.            )
                                            )
16    ──────────────────────────           )
                                            )
17    AND ALL RELATED                       )
      COUNTERCLAIMS AND THIRD               )
18    PARTY CLAIMS                          )
      ──────────────────────────           )

19            Presently before the Court is Defendants Maysoun Fletcher, Najwa Abazaki, and

20    Akram H. Abolhosen's Motion to Dismiss Plaintiff's Claims and/or Motion for Summary

21    Judgment (Doc. #84/#87), filed on July 11, 2013.  Plaintiff Fouad Daou filed an Opposition

22    (Doc. #93) on August 12, 2013.  Defendants filed a Reply (Doc. #104) on August 26, 2013.

23    **I. BACKGROUND**

24            This lawsuit was brought by Plaintiff Fouad Daou ("Fouad") against his cousin,

25    Defendant Riad "Rick" Abelson ("Rick"); Rick's wife, Defendant Sourya Abelson

26    ("Sourya"); Rick's sister, Defendant Maysoun Fletcher ("Maysoun"); Rick's other sister,

Najwa Abazaki ("Najwa"); and the three siblings' father, Defendant Akram H. Abolhosen ("Akram"). (Am. Compl. (Doc. #41) at 2-3.) Fouad alleges that Rick was viewed by his family as a successful optometrist and real estate investor, and Rick did not dispel his family's view even though his medical license was suspended and his real estate holdings were subject to multiple mortgages and personal loans. (Id. at 4.) Fouad alleges he shared his family's favorable image of Rick, and between 2004 and 2009, Fouad gave Rick approximately $1,240,000 to invest in Nevada real estate on Fouad's behalf. (Id.) Fouad placed the money in a joint banking account held in both Fouad and Rick's names, or he transferred money into Najwa's account, and she would transfer funds to Rick. (Id.)

According to the Amended Complaint, instead of investing the money on Fouad's behalf, Rick used the money to pay off his own debts or purchase real estate in his own name, not in Fouad's name. (Id.) Fouad alleges that when he asked Rick to record ownership of certain property in Fouad's name, Rick, Akram, and Najwa falsely advised him that the property could not be transferred to Fouad unless Fouad appeared in Nevada to be fingerprinted and to personally execute the property deed. (Id. at 5.) According to the Amended Complaint, Rick also falsely told Fouad that Fouad could not own property in the United States because Fouad was not a United States citizen. (Id. at 5.)

The Amended Complaint alleges Maysoun and Sourya "knew the various reasons they provided Fouad for not titling real property in [Fouad's] name were false and continued to assist [Rick] in titling property in his own name rather than that of Fouad." (Id.) Fouad alleges that Maysoun and Rick executed deeds of trust naming Maysoun as trustee, and then used these trusts to mislead Fouad into believing the properties could not be transferred into his name because they were being held "in trust." (Id. at 6.) Fouad asserts claims for breach of contract (count one), unjust enrichment (count two), fraud in the inducement (count three), fraud (count four), breach of the implied covenant of good faith and fair dealing (count five, mislabeled in the Amended Complaint as count six), and

civil conspiracy (count six, mislabeled in the Amended Complaint as count seven).

Defendants Maysoun, Najwa, and Akram now move to dismiss or alternatively for summary judgment on each of Fouad's claims against them.  Defendants argue there is no evidence supporting the claims against them, and Fouad admitted in his responses to discovery and during his deposition that he had no basis for his claims against these Defendants.  Defendants request attorney's fees for having to defend against these claims.

Plaintiff Fouad responds that Rick and his family members conspired to falsely represent to Fouad that Fouad must come to Nevada and be fingerprinted to hold property in his own name.  Fouad argues that instead of transferring the Nevada property, Defendants conspired to give Fouad property in Lebanon that was worth less than the Nevada properties to which Fouad is entitled due to the economic and political instability in Lebanon.  Fouad contends emails demonstrate that Akram and Najwa were involved in the exchange of Nevada property for property in Lebanon, and they therefore were complicit in depriving Fouad of the Nevada properties to which he is entitled.

## II.  DISCUSSION

Defendants style their Motion as one for dismissal, or alternatively for summary judgment.  The Court will consider evidence outside the pleadings as submitted by the parties, and the Court therefore will convert Defendants' Motion into one for summary judgment.  See United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003).  Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a), (c).  A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue is "genuine" if sufficient evidence exists such that a reasonable fact finder could find for the non-moving party.  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).  Initially,

1  the moving party bears the burden of proving there is no genuine issue of material fact.

2  Leisek v. Brightwood Corp., 278 F.3d 895, 898 (9th Cir. 2002).  If the moving party meets

3  its burden, the burden shifts to the non-moving party to produce evidence that a genuine

4  issue of material fact remains for trial.  Id.  The Court views all evidence in the light most

5  favorable to the non-moving party.  Id.

6          **A.  Contract Claims (counts one and five)**

7          Under Nevada law, to establish an enforceable contract, there must be "an offer

8  and acceptance, meeting of the minds, and consideration."  May v. Anderson, 119 P.3d

9  1254, 1257 (Nev. 2005).  For a plaintiff to bring a breach of contract action against a

10  defendant, the plaintiff and defendant must have a contractual relationship.  See Vargas v.

11  Cal. St. Auto. Ass'n Inter–Ins. Bureau, 788 F. Supp. 462, 464 (D. Nev. 1992).  Whether an

12  enforceable contract between the parties exists generally is a question of fact.  May, 119

13  P.3d at 1257.  Additionally, every contract in Nevada "imposes upon the contracting parties

14  the duty of good faith and fair dealing."  State, Univ. & Community Coll. Sys. v. Sutton,

15  103 P.3d 8, 19 (Nev. 2004) (quotation omitted).  A breach of good faith and fair dealing

16  claim necessarily "fails absent a contractual relationship."  Alam v. Reno Hilton Corp., 819

17  F. Supp. 905, 910 (D. Nev. 1993).

18          Defendant Maysoun denies she was even aware of the transactions between Rick

19  and Fouad until after the present lawsuit was filed, and she denies any participation in the

20  dealings between the cousins.  (Defs.' Mot. Summ. J. (Doc. #84), Maysoun Fletcher, Esq.'s

21  Aff. ["Maysoun Aff."] at 3.)  Defendant Maysoun also denies that she entered into any

22  agreements with Fouad.  (Id. at 4.)  In response to Maysoun's request for admissions, Fouad

23  admitted he had no contract relating to real estate with Maysoun, and admitted he had "no

24  basis to support [his] claim that Maysoun . . . breached any contract with [Fouad]."  (Defs.'

25  Mot. Summ. J., Ex. F at 8-9.)

26  ///

4

Defendants Najwa and Akram likewise deny they entered into any agreements with Fouad for the purchase of or investment in real estate in Nevada.  (Defs.' Mot. Summ. J., Najwas Abouzaki's Aff. ["Najwa Aff."] at 2-3, Akram H. Abolhosen's Aff. ["Akram Aff."] at 2-3.)  In response to Akram's request for admissions, Fouad admitted that during the relevant time frame, Fouad had no agreements with Akram for Akram to invest money on Fouad's behalf or "for the provision of services of any kind."  (Defs.' Mot. Summ. J., Ex. G at 2-3.)  Fouad presents no evidence of any agreement with any of these Defendants which would support his contract-based claims.  Consequently, no genuine issue of material fact remains, and the Court will grant summary judgment in favor of Defendants Maysoun, Najwa, and Akram on Fouad's claims for breach of contract and breach of the covenant of good faith and fair dealing.

### B.  Unjust Enrichment (count two)

"Unjust enrichment occurs whenever a person has and retains a benefit which in equity and good conscience belongs to another."  In re Amerco Derivative Litig., 252 P.3d 681, 703 (Nev. 2011).  Here, as with the contract-based claims, Defendants deny they were involved in the real estate transactions in Nevada.  (Maysoun Aff. at 3, Najwa Aff. at 2-3, Akram Aff. at 2.)  At his deposition, Fouad testified that he did not believe Maysoun owed him any money.  (Defs.' MSJ, Ex. D at 42.)  Fouad made loans to Najwa and Akram unrelated to his real estate deals in Nevada.  (Defs.' MSJ, Ex. D at 36-37, 46 48; see also Najwa Aff. at 3, Akram Aff. at 3.)  Najwa transferred a piece of property in Lebanon to Fouad, which Fouad sold for more than what Najwa owed him.  (Defs' MSJ, Ex. D at 16-18, 27-28, 46, 48.)  Akram granted Fouad a lien on other property in Lebanon to secure the loan Fouad made to Akram.  (Id. at 36-37, 39-40; see also Akram Aff. at 3.)  At his deposition, Fouad could not identify any debt beyond the loan which Akram owed to Fouad. (Defs.' Mot. Summ. J., Ex. D at 41.)  Fouad has not presented any evidence that Maysoun, Najwa, or Akram have retained a benefit which in equity and good conscience belongs to

1   Fouad.  The Court therefore will grant Defendants' Motion as to Fouad's unjust enrichment

2   claim.

3             **C.  Fraud Claims (counts three and four)**

4          The elements of a cause of action for common law fraud under Nevada law are:

5   (1) the defendant made a false representation; (2) the defendant knew or believed the

6   representation was false or the defendant had an insufficient basis for making the

7   representation; (3) the defendant intended to induce the plaintiff to act or refrain from

8   acting in reliance upon the misrepresentation; (4) the plaintiff justifiably relied on the

9   misrepresentation; and (5) damage to the plaintiff resulted from such reliance.  <u>Bulbman,</u>

10  <u>Inc. v. Nevada Bell</u>, 825 P.2d 588, 592 (Nev. 1992).  The plaintiff bears the burden of

11  proving each of these elements by clear and convincing evidence.  <u>Id.</u>

12         Here, Defendants deny making any representations to Fouad regarding Rick's

13  prowess as an investor or regarding investment advice in Nevada real estate.  (Maysoun

14  Aff. at 3-4, 6-7, Najwa Aff. at 3, Akram Aff. at 3.)  At his deposition, Fouad admitted that

15  Maysoun never advised him about real estate values, and none of these Defendants made

16  any representations to Fouad about the properties Rick purchased with Fouad's money.

17  (Defs.' MSJ, Ex. D at 42,  Ex. E at 8-9, 27-29.)

18         In response, Fouad has presented no evidence that any of these Defendants made

19  any misrepresentations to him.  In his brief, Fouad argues Defendants misrepresented to

20  Fouad that because he was a Lebanese citizen, he would have to come to Nevada and be

21  fingerprinted before being allowed to title property in his own name.  (Opp'n to Defs.' Mot.

22  Summ. J. at 2.)  However, Fouad has presented no admissible evidence that any of these

23  Defendants ever made any such representation to him.  In response to Rick's separate

24  Motion for Summary Judgment, Fouad presents several emails between himself and Rick,

25  and between other individuals.  (Opp'n to Def.'s Mot. Summ. J. (Doc. #92), Exs. 5-8.)

26  These emails are unauthenticated and contain hearsay.  Defendants' objections to these

exhibits therefore are sustained, and, as a result, the emails do not raise an issue of fact that any of these Defendants made misrepresentations to Fouad upon which Fouad relied to his detriment.  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 385 (9th Cir. 2010); Orr v. Bank of Am., NT & SA, 285 F.3d 764, 773 (9th Cir. 2002).

Even if the emails were admissible, none of them mentions Defendants Maysoun or Akram.  Three emails mention Defendant Najwa.  The first is a statement in an email from Rick to Fouad, where Rick states that Najwa "already told me that nothing could be done."  (Opp'n to Defs.' Mot. Summ. J., Ex. 5.)  The second email is between two non-parties to this case, in which the author states that Rick's argument as to why Fouad could not "register his share in the properties is nonsense.  As well as Najwa's argument that Fouad doesn't have citizenship."  (Id., Ex. 7.)  The third email is from Fouad to Rick, wherein Fouad indicates that Najwa is declining to sign some unidentified document, and her refusal may necessitate Fouad coming to the United States to get Rick to transfer property into Fouad's name.  (Id., Ex. 8.)  Even if these hearsay statements in unauthenticated emails were admissible, it is unclear precisely what Najwa said and to whom.  Fouad has presented no evidence Fouad relied on any representations Najwa made to him, and Fouad has presented no evidence he was damaged as a result of such reliance. The Court therefore will grant Defendants' Motion for Summary Judgment on Fouad's fraud claims.

**D.  Civil Conspiracy**

In Nevada, "an actionable conspiracy consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts."  Hilton Hotels Corp. v. Butch Lewis Prods., Inc., 862 P.2d 1207, 1210 (Nev. 1993) (quotation omitted).  Civil conspiracy is not an independent claim, and does not give rise to a cause of action unless a civil wrong has been committed resulting in damage.  Jordan v. State ex rel. Dep't of Motor

Vehicles & Pub. Safety, 110 P.3d 30, 51 (Nev. 2005) (per curiam) (stating that "an underlying cause of action for fraud is a necessary predicate to a cause of action for conspiracy to defraud"), abrogated on other grounds by Buzz Stew, LLC v. City of N. Las Vegas, 181 P.3d 670, 672 n.6 (Nev. 2008).

The Court has granted summary judgment in favor of these Defendants on all of Fouad's other claims.  Because civil conspiracy is not an independent claim, the Court will grant Defendants' Motion with respect to this claim as well.  Moreover, Defendants have denied any such conspiracy and Fouad has presented no admissible evidence from which a reasonable jury could find Defendants agreed to harm Fouad, resulting in damage to Fouad. (Maysoun Aff. at 5, Najwa Aff. at 4, Akram Aff. at 3-4.)  The Court therefore will grant Defendants' Motion for Summary Judgment on Fouad's civil conspiracy claim.

### E. Attorney's Fees

Defendants request attorney's fees for defending this action.  However, Defendants present no legal authority in support of their request.  The Court therefore will deny the request.  See LR 7-2(d), 54-16(d).

## III.  CONCLUSION

IT IS THEREFORE ORDERED that Defendants Maysoun Fletcher, Najwa Abazaki, and Akram H. Abolhosen's Motion to Dismiss Plaintiff's Claims and/or Motion for Summary Judgment (Doc. #84/#87) is hereby GRANTED.

IT IS FURTHER ORDERED that Judgment is hereby entered in favor of Defendants Maysoun Fletcher, Najwa Abazaki, and Akram H. Abolhosen, and against Plaintiff Fouad Daou.

DATED:  March 9, 2014

_____
PHILIP M. PRO
United States District Judge