UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FOUAD DAOU,<br><br>        Plaintiff,<br><br>v.<br><br>RICK A. ABELSON, SOURYA ABELSON, NAJWA ABAZAKI, MAYSOUN FLETCHER, and AKRAM H. ABOLHOSEN,<br><br>        Defendants.<br><br>AND ALL RELATED COUNTERCLAIMS AND THIRD PARTY CLAIMS | 2:11-CV-01385-PMP-GWF<br><br>ORDER |

        Presently before the Court is Third Party Defendant Donia R. Daou's Motion to Dismiss Third Party Claim or in the Alternative, Dismiss the Complaint (Doc. #88), filed on July 17, 2013. Defendant/Third Party Plaintiff Riad "Rick" Abelson filed an Opposition (Doc. #95) on August 12, 2013. Third Party Defendant Donia R. Daou filed a Reply (Doc. #103) on August 22, 2013.

**I. BACKGROUND**

        This lawsuit was brought by Plaintiff Fouad Daou ("Fouad") against his cousin, Defendant Riad "Rick" Abelson ("Rick"); Rick's wife, Defendant Sourya Abelson ("Sourya"); Rick's sister, Defendant Maysoun Fletcher ("Maysoun"); Rick's other sister, Najwa Abazaki ("Najwa"); and the three siblings' father, Defendant Akram H. Abolhosen

("Akram"). (Am. Compl. (Doc. #41) at 2-3.) Fouad alleges that Rick was viewed by his family as a successful optometrist and real estate investor, and Rick did not dispel his family's view even though his medical license was suspended and his real estate holdings were subject to multiple mortgages and personal loans. (Id. at 4.) Fouad alleges he shared his family's favorable image of Rick, and between 2004 and 2009, Fouad gave Rick approximately $1,240,000 to invest in Nevada real estate on Fouad's behalf. (Id.) Fouad placed the money in a joint banking account held in both Fouad and Rick's names, or he transferred money into Najwa's account, and she would transfer funds to Rick. (Id.)

According to the Amended Complaint, instead of investing the money on Fouad's behalf, Rick used the money to pay off his own debts or purchased real estate in his own name, not in Fouad's name. (Id.) Fouad alleges that when he asked Rick to record ownership of certain property in Fouad's name, Rick, Akram, and Najwa falsely advised him that the property could not be transferred to Fouad unless Fouad appeared in Nevada to be fingerprinted and to personally execute the property deed. (Id. at 5.) According to the Amended Complaint, Rick also falsely told Fouad that Fouad could not own property in the United States because Fouad was not a United States citizen. (Id.) Fouad asserts claims for breach of contract, unjust enrichment, fraud in the inducement, fraud, breach of the implied covenant of good faith and fair dealing, and civil conspiracy.

Rick and Akram filed a Counterclaim against Fouad and filed a Third Party Complaint against Third Party Defendants Donia F. Abi Rafeh Daou ("Donia"), Fouad's wife, and Ziad Daou ("Ziad"), Fouad's brother. (Ans. to Am. Compl., Countercl., & Third-Party Compl. (Doc. #37) ["Third Party Compl."] at 8.) Rick and Akram allege that in 2010, they loaned money to Fouad and temporarily conveyed title to real property located in Lebanon in Fouad's name, which Fouad promised to reconvey to Rick and Akram. (Id. at 10.) Rick and Akram allege they loaned the money and conveyed the property because Fouad, Donia, and Ziad told them that Fouad needed the assets to keep from being sent to

prison in Saudi Arabia.  (Id.)

According to the Third Party Complaint, Fouad did not use the money and property as intended, Fouad was not in danger of being sent to jail, and Fouad has refused to repay the loans or reconvey the property.  (Id. at 10-11, 16.)  Rick and Akram further allege Fouad and Ziad forged a bill of sale for property located in Nevada, placing the property in the names of Fouad and Donia.  (Id. at 16.)  Rick and Akram bring claims for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, conversion, promissory estoppel, constructive trust, fraud in the inducement, fraud, civil conspiracy, Nevada civil RICO, and for declaratory relief.  (Id. at 13-29.)

Third Party Defendant Donia now moves to dismiss the Third Party Complaint against her.  Donia argues the Court has no jurisdiction over the property located in Lebanon, and the Court therefore cannot grant relief in relation to that property.  Alternatively, Donia argues the Court lacks personal jurisdiction over her because she was not served in Nevada or anywhere else, and she lacks minimum contacts with Nevada.  Donia also contends that discovery is now closed, and there is no evidence that she conspired with her husband to deprive Rick or Akram of their property.

Third Party Plaintiffs Rick and Akram respond that the parties have not taken Donia's deposition yet, and therefore the motion is premature.  Rick and Akram further argue that the Court has jurisdiction over the parties, and therefore has contempt power to compel the parties to take appropriate actions, such as transferring property in Lebanon.  As to personal jurisdiction, Rick and Akram argue that Donia is a recorded property owner of property in Nevada, she is a managing member of a Nevada limited liability company, and she filed a United States tax return in 2008 with a Nevada address.  Additionally, Rick avers that Donia visited Las Vegas, Nevada, inspected property in Las Vegas, and implored Rick to provide the money and property to Fouad while Donia and Rick were in Las Vegas.  Rick and Akram therefore contend Donia has minimum contacts with Nevada.  Moreover, Rick

and Akram argue Donia waived the personal jurisdiction issue because she did not raise it by motion prior to her Answer or as an affirmative defense in her Answer.

## II. DISCUSSION

### A. Personal Jurisdiction

Pursuant to Federal Rule of Civil Procedure 12(h)(1)(A), a party waives the defenses of insufficient service of process and lack of personal jurisdiction if the party does not raise the defense in a pre-answer motion or in the answer.  Donia filed her Answer (Doc. #62) on July 9, 2012.  Donia did not assert that she was not properly served or that the Court lacked personal jurisdiction over her.  Donia therefore waived these defenses.

Even if Donia had not waived these defenses, Donia contends she was never served, but Rick and Akram filed a proof of service showing Donia was served in Lebanon on June 18, 2012.  (Summons Returned Executed (Doc. #61).)  Donia has not explained why this service was insufficient.

As to personal jurisdiction, Rick and Akram bear the burden of demonstrating the Court has jurisdiction over Donia.  Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006).  To meet this burden, Rick and Akram must demonstrate that personal jurisdiction over a defendant is (1) permitted under Nevada's long-arm statute and (2) that the exercise of jurisdiction does not violate federal due process.  Id.  As to the first issue, Nevada's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution.  Nev. Rev. Stat. § 14.065(1) ("A court of this state may exercise jurisdiction over a party to a civil action on any basis not inconsistent with the constitution of this state or the Constitution of the United States.").  Because Nevada exercises jurisdiction to the extent the Constitution permits, the Court need determine only whether personal jurisdiction in this case would meet federal due process standards.  Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003).

1   To satisfy federal due process standards, a nonresident defendant must have
2 "minimum contacts" with the forum state so that the assertion of jurisdiction does not
3 offend traditional notions of fair play and substantial justice. Pebble Beach Co., 453 F.3d at
4 1155 (quotation omitted). A federal district court may exercise either general or specific
5 personal jurisdiction. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S.
6 408, 414-15 (1984).
7   To establish general personal jurisdiction, the plaintiff must demonstrate the
8 defendant has sufficient contacts to "constitute the kind of continuous and systematic
9 general business contacts that 'approximate physical presence.'" Glencore Grain
10 Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1124 (9th Cir. 2002)
11 (quoting Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir.
12 2000), modified, Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d
13 1199, 1207 (9th Cir. 2006)). "[A] defendant whose contacts are substantial, continuous,
14 and systematic is subject to a court's general jurisdiction even if the suit concerns matters
15 not arising out of his contacts with the forum." Id. at 1123.
16   A nonresident defendant's contacts with the forum state may permit the exercise
17 of specific jurisdiction if: (1) the defendant has performed some act or transaction within
18 the forum or purposefully availed himself of the privileges of conducting activities within
19 the forum, (2) the plaintiff's claim arises out of or results from the defendant's
20 forum-related activities, and (3) the exercise of jurisdiction over the defendant is
21 reasonable. Pebble Beach Co., 453 F.3d at 1155-56. "If any of the three requirements is
22 not satisfied, jurisdiction in the forum would deprive the defendant of due process of law."
23 Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995).
24   The issue is before the Court on a motion to dismiss based on affidavits and
25 discovery materials without an evidentiary hearing. Rick and Akram therefore must make
26 "a prima facie showing of facts supporting jurisdiction through [their] pleadings and

affidavits to avoid dismissal." Glencore Grain, 284 F.3d at 1119.  The Court accepts as true any uncontroverted allegations in the Third Party Complaint and resolves any conflicts between the facts contained in the parties' evidence in favor of Rick and Akram.  Id.

Rick and Akram have established a prima facie case that this Court may exercise personal jurisdiction over Donia.  Rick avers that he met with Donia in Las Vegas fifteen times over the past ten years when Donia visited "for purposes of monitoring and investigating the status of [her and Fouad's] real property ownership in Nevada, for family visitations, and for shopping."  (Opp'n to Mot. to Dismiss Third Party Claim or in the Alternative, Dismiss the Compl. Against Donia R. Daou (Doc. #95), Aff. of Riad "Rick" Abelson ["Rick Aff."] at 3.)  Donia went to various properties in Las Vegas and Pahrump that Rick had purchased or planned to purchase on behalf of Fouad and Donia.  (Id. at 3, 5.)

Rick avers that Donia visited him at his home in Las Vegas in January 2010, at which time Donia "personally implored" Rick "to assist her husband to avoid jail based upon the alleged pending criminal charges which might imprison Fouad unless he was provided with assets in his name."  (Id. at 3-4.)  According to Rick, Donia's statements induced Rick and Akram to convey land and money to Fouad on the condition that the assets be returned once the criminal charges were resolved.  (Id. at 4.)  However, when Rick attempted to regain the funds and property, he was met with a denial that the transfers of money and property were temporary.  (Id.)  Rick contends this scheme was "directly relate[d] to [Fouad and Donia's] apparent attempt to recover losses sustained by all in Nevada real property investments."  (Id. at 5.)

Rick and Akram therefore have presented evidence that Donia has performed acts or transactions within Nevada, including visits to view the Nevada properties that were the subject of an agreement and later dispute between Rick and Fouad.  The losses sustained from these investments in Nevada property allegedly were the impetus for Donia making fraudulent statements to Rick in Nevada to induce him to loan money and convey property

6

1  to Fouad.  Rick and Akram's claims arise out of Donia's forum-related contacts, as their
2  claims relate to the parties' alleged agreements and representations regarding the loans and
3  conveyance of property to Fouad, as well as Donia's alleged misrepresentations to Rick and
4  Akram.  Finally, it is reasonable for the Court to exercise personal jurisdiction over Donia.
5  Having allegedly made false representations in Nevada to a then-Nevada resident to induce
6  him and his father to convey money and property, it would be reasonable for Donia to be
7  haled into a Nevada court to litigate claims arising out of those activities.  The Court
8  therefore will deny Donia's Motion to the extent it is based on the argument that the Court
9  lacks personal jurisdiction over her.

### B. Subject Matter Jurisdiction

Because the Court has personal jurisdiction over Donia, the Court could order her to take appropriate action in Lebanon, or alternatively to pay damages, should Rick and Akram prevail.  See F.T.C. v. Affordable Media, 179 F.3d 1228, 1240 (9th Cir. 1999) ("Because the physical person of the defendant remains subject to domestic courts' jurisdictions, courts could normally utilize their contempt powers to force a defendant to return the assets to their jurisdictions.").  The Court therefore does not lack jurisdiction due to the fact that the parties' dispute involves property in Lebanon.

### C. Failure to State a Claim/Summary Judgment

It is unclear from Donia's Motion whether she seeks dismissal or summary judgment.  To the extent Donia seeks dismissal because the Third Party Complaint contains only "bare allegations" of her participation, the Court will deny the Motion.  (Mot. to Dismiss Third Party Claim or in the Alternative, Dismiss the Compl. Against Donia R. Daou (Doc. #88) at 6.)  The Third Party Complaint adequately alleges plausible, non-conclusory factual allegations regarding Donia's participation in an alleged scheme with Fouad and Ziad to defraud Rick and Akram out of money and property.  (Third Party Compl. at 15-18, 20-21); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).  The Third

Party Complaint alleges Donia knew the representations regarding Fouad facing prison in Saudi Arabia were untrue, but she acted in concert with Fouad and Ziad when she told Rick and Akram that Fouad needed property titled in his name to avoid prison. (Third Am. Compl. at 15-18, 20-21.)

To the extent Donia seeks summary judgment because "absolutely no evidence exists" that Donia conspired with Fouad to deprive Rick and Akram of money and property, the Court will deny the Motion. Rick states in his affidavit that Donia "implored" and "pleaded with" Rick to assist Fouad in avoiding prison in Saudi Arabia, which induced Rick and Akram to convey land and property to Fouad on what was supposed to be a temporary basis. (Rick Aff. at 4.) According to Rick, these statements were false, and were an attempt by Fouad and Donia to recover their losses in real estate investment deals with Rick in Nevada. (Id. at 4-5.) Upon attempting to recover the money and property, Rick and Akram were met with denials that the transfers were supposed to be temporary. (Id. at 4.) Rick and Akram therefore have presented evidence of Donia's participation, and the Court will deny Donia's Motion for dismissal or for summary judgment.[1]

**III. CONCLUSION**

IT IS THEREFORE ORDERED that Third Party Defendant Donia R. Daou's Motion to Dismiss Third Party Claim or in the Alternative, Dismiss the Complaint (Doc. #88) is hereby DENIED.

DATED: March 9, 2014

_____
PHILIP M. PRO
United States District Judge

---

[1] Donia's Motion does not present evidence or argument specific to any particular cause of action beyond her general arguments that there are no allegations or evidence of her participation in the events in question. The Court therefore will not engage in a claim-by-claim analysis. See LR 7-2(d).