UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FOUAD DAOU,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>RICK A. ABELSON, SOURYA ABELSON, NAJWA ABAZAKI, MAYSOUN FLETCHER, and AKRAM H. ABOLHOSEN,<br><br>　　　　　Defendants.<br><br>AND ALL RELATED COUNTERCLAIMS AND THIRD PARTY CLAIMS | 2:11-CV-01385-PMP-GWF<br><br>ORDER |

Presently before the Court is Defendant Riad ("Rick") Abelson's Motion for Summary Judgment in Defendant's Favor on Plaintiff's Claims for Relief (Doc. #90), filed on July 17, 2013. Plaintiff Fouad Daou filed an Opposition (Doc. #94) on August 12, 2013. Defendant Riad ("Rick") Ableson filed a Reply (Doc. #105) on August 26, 2013.

**I. BACKGROUND**

This lawsuit was brought by Plaintiff Fouad Daou ("Fouad") against his cousin, Defendant Riad "Rick" Abelson ("Rick"); Rick's wife, Defendant Sourya Abelson ("Sourya"); Rick's sister, Defendant Maysoun Fletcher ("Maysoun"); Rick's other sister, Najwa Abazaki ("Najwa"); and the three siblings' father, Defendant Akram H. Abolhosen

("Akram").  (Am. Compl. (Doc. #41) at 2-3.)  Fouad alleges that Rick was viewed by his family as a successful optometrist and real estate investor, and Rick did not dispel his family's view even though his medical license was suspended and his real estate holdings were subject to multiple mortgages and personal loans.  (Id. at 4.)  Fouad alleges he shared his family's favorable image of Rick, and between 2004 and 2009, Fouad gave Rick approximately $1,240,000 to invest in Nevada real estate on Fouad's behalf.  (Id.)  Fouad placed the money in a joint banking account held in both Fouad and Rick's names, or he transferred money into Najwa's account, and she would transfer funds to Rick.  (Id.)

According to the Amended Complaint, instead of investing the money on Fouad's behalf, Rick used the money to pay off his own debts or purchased real estate in his own name, not in Fouad's name.  (Id.)  Fouad alleges that when he asked Rick to record ownership of certain property in Fouad's name, Rick, Akram, and Najwa falsely advised him that the property could not be transferred to Fouad unless Fouad appeared in Nevada to be fingerprinted and to personally execute the property deed.  (Id. at 5.)  According to the Amended Complaint, Rick also falsely told Fouad that Fouad could not own property in the United States because Fouad was not a United States citizen.  (Id.)  Fouad asserts claims for breach of contract (count one), unjust enrichment (count two), fraud in the inducement (count three), fraud (count four), breach of the implied covenant of good faith and fair dealing (count five, mislabeled in the Amended Complaint as count six), and civil conspiracy (count six, mislabeled in the Amended Complaint as count seven).

Rick now moves for summary judgment on all of Fouad's claims against him, arguing that the evidence shows for each transfer of Fouad's funds, Rick purchased property in which Fouad had an interest, even if it was not titled in Fouad's name.  Rick notes he had a power of attorney to purchase real estate on Fouad's behalf, and Fouad cannot identify any contractual terms Rick has breached.  Rick argues Fouad had no complaints about what property Rick purchased or how it was titled until the Nevada real

estate market collapsed and Fouad is now trying to recoup real estate market losses from Rick.

As to the fraud and conspiracy claims, Rick argues the Amended Complaint lacks detail regarding what representations Rick made, when or where he made them, and why they were false.  Rick asserts that any representations he made to Fouad regarding the Nevada real estate market were not representations of fact or guarantees that Fouad would make a profit by investing in Nevada property.  Rick further contends there is no evidence any such representations were untrue when Rick made them.  According to Rick, Fouad received what he wanted, and is suing now only because Nevada real estate has lost value, but that does not amount to fraud.  Finally, Rick argues Fouad cannot show damages resulting from any of Rick's conduct, as opposed to the market collapse in Nevada real estate prices.

Fouad responds that he entrusted over $1 million with Rick, but Rick titled properties in his own name or in the name of legal entities Rick controlled.  Fouad contends Rick did not share with Fouad the profits from any sales of real estate.  Fouad argues Rick did not tell Fouad about Rick's legal troubles or lack of success in investing in Nevada real estate.  Fouad contends that when he asked Rick to transfer property into Fouad's name, he was met with excuses and lies as to why the property could not be titled in Fouad's name.  Fouad contends Rick was unjustly enriched by titling property in Rick's name because it allowed Rick to increase his portfolio and qualify for loans based on Fouad's assets.

As to the fraud and conspiracy claims, Fouad argues Rick misrepresented his capabilities as a real estate investor, Fouad relied on these misrepresentations by entrusting funds with Rick, and Fouad was damaged as a result because Rick titled the properties in his own name and then refused to place them in Fouad's name when requested to do so.  Fouad also argues Rick gave false excuses as to why the property could not be placed in Fouad's name once Fouad requested the property be titled in his name.

## II. DISCUSSION

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" if sufficient evidence exists such that a reasonable fact finder could find for the non-moving party. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). Initially, the moving party bears the burden of proving there is no genuine issue of material fact. Leisek v. Brightwood Corp., 278 F.3d 895, 898 (9th Cir. 2002). If the moving party meets its burden, the burden shifts to the non-moving party to produce evidence that a genuine issue of material fact remains for trial. Id. The Court views all evidence in the light most favorable to the non-moving party. Id.

### A. Contract Claims (counts one and five)

Under Nevada law, a plaintiff in a breach of contract action must "show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." Saini v. Int'l Game Tech., 434 F. Supp. 2d 913, 920-21 (D. Nev. 2006) (citing Richardson v. Jones, 1 Nev. 405, 405 (1865)). Additionally, every contract in Nevada "imposes upon the contracting parties the duty of good faith and fair dealing." State, Univ. & Community Coll. Sys. v. Sutton, 103 P.3d 8, 19 (Nev. 2004) (quotation omitted).

It is undisputed between the parties that Fouad and Rick entered into an agreement that Fouad would provide funds for Rick to invest in Nevada real estate. On September 6, 2004, Fouad executed a power of attorney appointing Rick as his attorney in fact and agent. (Def. Riad ("Rick") Abelson's Mot. Summ. J. in Def.'s Favor on Pl.'s Claims for Relief (Doc. #90) ["MSJ"], Ex. D.) The power of attorney authorized Rick to "execute, sign, seal, deliver and acknowledge all contracts, agreements, assignments, deeds,

leases, covenants, indentures, [and] mortgages" on Fouad's behalf and, as to real property, Rick could "generally . . . act and deal with respect to such real property as fully and effectually as [Fouad] could do." (Id.)

In 2004, Fouad gave Rick $130,000 to purchase property. (MSJ, Ex. A at 50-53.) Rick purchased property in Pahrump on East Irene and gave Fouad a fifty percent stake in the property in exchange for the $130,000. (MSJ, Ex. A at 50-51, Ex. F.) In 2004, Fouad was satisfied that Rick used the $130,000 for its intended purposes. (MSJ, Ex. A at 53.) In August 2006, Fouad transferred two separate payments of $145,000 and $150,000 to Rick in exchange for a fifty percent ownership stake in properties Rick owned on Flamingo and on Happy Lane in Pahrump. (MSJ, Ex. A at 58, 62-64, Ex. G.)

In 2008 and 2009, Fouad agreed to purchase a thirty percent interest in a limited liability company, Decatur & Eldorado Plaza, LLC, that was going to develop property in Las Vegas. (MSJ, Ex. A at 64-65, 82, Ex. B.) To obtain the thirty percent share, Fouad agreed to pay Rick $500,000. (MSJ, Ex. A at 64-66.) Fouad testified he paid $250,000 toward the purchase price, but he declined to make any further contributions because in 2010, Fouad's brother Ziad informed Fouad that Fouad's name had been removed as a member of the limited liability company. (Id. at 66-67, 85-86, 91-92.) Fouad never spoke to or questioned Rick about Fouad being removed as a member of the LLC. (Id. at 86.) According to the Decatur & Eldorado Plaza, LLC Operating Agreement, Fouad is a member of the company with a thirty percent share. (MSJ, Ex. B.) Fouad also testified he stopped making payments because he learned that Rick did not have the money to build the project. (MSJ, Ex. A at 88-89.)

In October 2009, Rick transferred the Happy Lane property to Fouad. (MSJ, Ex. E at 42, Ex. H.) In 2010, Fouad asked in writing for Rick to transfer other property into Fouad's name but Rick did not do so. (MSJ, Ex. E at 45.) Prior to 2010, Fouad occasionally had asked verbally for Rick to title property in Fouad's name, but he did not

1  insist Rick do so.  (Id. at 81-82.)

2  Viewing the evidence before the Court in the light most favorable to Fouad, Fouad has failed to present evidence raising a genuine issue of material fact that Rick breached any contractual term or the implied covenant of good faith and fair dealing. Fouad presents no evidence that one of the contract terms was that Rick was to title property in Fouad's name.  Rather, Rick has presented evidence that Rick titled property in his own name and gave Fouad contractual rights in the properties, and Fouad at least initially was satisfied with that arrangement.  Additionally, Rick has presented a power of attorney which Fouad executed granting broad powers for Rick to invest in real estate on Fouad's behalf.

Fouad also fails to present evidence raising a genuine issue of material fact that he was damaged as a result of any alleged breach.  Fouad has not presented any evidence to support his theory that if the property had been titled in his own name, he could have mitigated his damages by selling the property.  Rick has presented evidence that Fouad retains interests in the East Irene and Flamingo properties, and that Fouad received the Happy Lane property.  Rick also has presented evidence that Fouad retains his membership in Decatur & Eldorado Plaza, LLC.  Fouad has not presented any evidence that Rick sold any properties in which Fouad had an interest but did not share the proceeds.  Nor has Fouad presented any evidence that the interests he holds are worth less than what he could have sold the properties for had they been titled in his name.  The Court therefore will grant Rick's Motion as to Fouad's contract claims.

**B. Unjust Enrichment (count two)**

"Unjust enrichment occurs whenever a person has and retains a benefit which in equity and good conscience belongs to another."  In re Amerco Derivative Litig., 252 P.3d 681, 703 (Nev. 2011) (quotation omitted).  The only benefit Fouad identifies to support his unjust enrichment claim is that Rick was able to use the fact that the properties were titled

in Rick's name to expand Rick's portfolio and qualify for a home loan.  However, Fouad presents no evidence that Rick received any loan he would not otherwise have been eligible for based on having the properties titled solely in his name.  Nor has Fouad explained how his damages relate to this claimed benefit to Rick.  The Court therefore will grant Rick's Motion as to Fouad's unjust enrichment claim.

### C.  Fraud Claims (counts three and four)

The elements of a cause of action for common law fraud under Nevada law are: (1) the defendant made a false representation; (2) the defendant knew or believed the representation was false or the defendant had an insufficient basis for making the representation; (3) the defendant intended to induce the plaintiff to act or refrain from acting in reliance upon the misrepresentation; (4) the plaintiff justifiably relied on the misrepresentation; and (5) damage to the plaintiff resulted from such reliance.  Bulbman, Inc. v. Nevada Bell, 825 P.2d 588, 592 (Nev. 1992).  The plaintiff bears the burden of proving each of these elements by clear and convincing evidence.  Id.

Viewing the facts in the light most favorable to Fouad, Fouad has not presented evidence raising a genuine issue of material fact that Rick made any misrepresentations to Fouad upon which Fouad relied to his detriment.  At his deposition, Fouad testified that Rick represented Rick was investing in Nevada real estate in 2004, but Fouad admits that was a true statement.  (MSJ, Ex. E at 24-25.)  Fouad further testified that Rick represented in 2006 that Rick was making money on real estate investments.  (Id. at 27-29.)  Fouad testified he had no information as to whether that statement was true or not true, and he has presented no evidence on summary judgment that it was untrue at the time Rick made the statement.  (Id. at 27-29.)  As to Rick failing to inform Fouad about various lawsuits against Rick, only one of the lawsuits pre-dates the last transfer of funds from Fouad to Rick.  (Opp'n to Def.'s Mot. Summ. J. (Doc. #92), Exs. 5-8.)  Additionally, Fouad has presented no evidence that he would not have transferred funds to Rick had he known about the

lawsuits.

In his Opposition, Fouad contends Rick gave Fouad false excuses as to why the property could not be titled in Fouad's name. In support, Fouad presents emails between Fouad and Rick.[1] In one email, dated February 13, 2010, Rick states:

> The house situation is very complex and my sister Najwa already told me that nothing could be done. . . . My situation here is very complicated because I was improperly served with a law [sic] during my absence last summer and because I didn't know and didn't answer it on time, they won the case on Feb 3rd. . . . The properties are put away from creditors and safe in the trust since it was formed for more than 1 yr. . . . I was highly advised by 2 diff [sic] attorneys that at the present time any property taken out of the trust will be attached to the law suit. Once the lawsuit is settled then it won't be a problem. . . . Even if this unfortunate problem did not occur at the present time and the properties were transferred to your name you wouldn't be able to get any financing.

(Opp'n to Def.'s Mot. Summ. J., Ex. 5.) In another email, Rick states that he asked his attorney "about taking properties out of Trust and he was completely against it and a big chance of losing any Assets out of trust. I don't want you to worry about the properties they are safe in the trust." (Opp'n to Def.'s Mot. Summ. J., Ex. 6.)

Fouad has not presented any evidence that any of these statements were untrue at the time Rick made them. Fouad also has not presented any evidence that he relied on any of these statements to his detriment. The email in which Rick made these statements is dated February 2010. Fouad has presented no evidence that he transferred any funds to Rick after that date, or that he thereafter took any action or refrained from taking any action in reliance upon any of these representations.

In a separate email to Fouad dated May 10, 2010, Rick states that if Fouad "would like to come here so we can transfer the remaining Two properties into your name:

---

[1] The emails are unauthenticated and therefore cannot support summary judgment. In re Oracle Corp. Sec. Litig., 627 F.3d 376, 385 (9th Cir. 2010); Orr v. Bank of Am., NT & SA, 285 F.3d 764, 773 (9th Cir. 2002). However, Rick did not object to the emails as unauthenticated.

1  One of the Irene [and] Half of the Flamingo," then Fouad should make travel arrangements
2  in June, July, or August.  (Id.)  To the extent this email shows Rick represented to Fouad
3  that Fouad would have to personally come to Nevada to effect a change in property titles,
4  Fouad has not presented any evidence he relied on this statement to his detriment.  Fouad
5  already had transferred the funds to purchase the properties.  Fouad has presented no
6  evidence that he transferred any funds to Rick after that date, or that he thereafter took any
7  action or refrained from any taking action in reliance upon the representation that property
8  could be transferred into his name only if he came to Nevada.  The Court therefore will
9  grant Rick's Motion as to Fouad's fraud claims.

### D.  Civil Conspiracy

In Nevada, "an actionable conspiracy consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts."  Hilton Hotels Corp. v. Butch Lewis Prods., Inc., 862 P.2d 1207, 1210 (Nev. 1993) (quotation omitted).  Civil conspiracy is not an independent claim, and does not give rise to a cause of action unless a civil wrong has been committed resulting in damage.  Jordan v. State ex rel. Dep't of Motor Vehicles & Pub. Safety, 110 P.3d 30, 51 (Nev. 2005) (per curiam) (stating that "an underlying cause of action for fraud is a necessary predicate to a cause of action for conspiracy to defraud"), abrogated on other grounds by Buzz Stew, LLC v. City of N. Las Vegas, 181 P.3d 670, 672 n.6 (Nev. 2008).

The Court has granted summary judgment in favor of Rick on all of Fouad's other claims.  Moreover, Fouad has presented no evidence that Rick conspired with anyone, resulting in damage to Fouad.  Because civil conspiracy is not an independent claim, and because Fouad has presented no evidence of conspiracy, the Court will grant Rick's Motion with respect to Fouad's civil conspiracy claim.

///

### III. CONCLUSION

      IT IS THEREFORE ORDERED that Defendant Riad ("Rick") Abelson's Motion for Summary Judgment in Defendant's Favor on Plaintiff's Claims for Relief (Doc. #90) is hereby GRANTED.

DATED: March 9, 2014

_____
PHILIP M. PRO
United States District Judge