1

2                    **UNITED STATES DISTRICT COURT**

3                          **DISTRICT OF NEVADA**

4                                  * * *

5    FOUAD DAOU,                              Case No. 2:11-cv-01385-RFB-GWF

6                            Plaintiff,
                                                       **ORDER**
7            v.

8    RIAD ("RICK") ABELSON, an individual;    Defendants Rick Abelson, Maysoun
     RICK A. ABELSON, managing member of      Fletcher, Najwas Abazaki, and Akram H.
9    DECATUR & ELDORADO PLAZA, LLC, a         Abolhosen's Motion for Award of
     Nevada limited liability company; RICK A. Attorney's Fees and Non-Taxable Costs
10   ABELSON, managing member of PLUTO 2DR,            (ECF No. 123)
     LLC, a Nevada limited liability company; RICK
11   A. ABELSON, managing member of VENUS
     2DR, a Nevada limited liability company;
12   SOURAYA L. ABELSON, an individual;
     MAYSOUN FLETCHER, an individual;
13   AKRAM H. ABOLHOSEN, an individual; and
     NAJWAS ABAZAKI, an individual,
14
                             Defendants.
15

16   AND ALL RELATED COUNTERCLAIMS
     AND THIRD PARTY CLAIMS
17

18

19       **I.      INTRODUCTION**

20           Presently before the Court is Defendants Rick Abelson, Maysoun Fletcher, Najwas

21   Abazaki, and Akram H. Abolhosen's ("Defendants") Motion for Award of Attorney Fees and

22   Costs Not Taxable Pursuant to LR 54-1 through 54-15 (ECF No. 123), filed on March 25, 2014.

23   Plaintiff Fouad Daou ("Fouad") filed an Opposition (ECF No. 124) on April 1, 2014. Defendants

24   filed a Reply (ECF No. 127) on April 11, 2014.

25

26       **II.     BACKGROUND**

27           The parties are familiar with the facts of this case, and the Court will not repeat them here

28   except where necessary. Fouad has asserted claims for breach of contract (Count One), unjust

enrichment (Count Two), fraud in the inducement (Count Three), fraud (Count Four), breach of the implied covenant of good faith and fair dealing (Count Five, mislabeled in the Amended Complaint (ECF No. 41) as Count Six), and civil conspiracy (Count Six, mislabeled in the Amended Complaint as Count Seven) against all Defendants in this case. On March 10, 2014, the Court granted summary judgment in favor of Defendants Maysoun Fletcher ("Maysoun"), Najwas Abazaki ("Najwas"), and Akram H. Abolhosen ("Akram") on all claims Fouad asserted against them. See Order (ECF No. 117). The same day, the Court also granted summary judgment in favor of Defendant Riad "Rick" Abelson ("Rick") on all claims. See Order (ECF No. 120). On September 19, 2014, the parties stipulated to the dismissal of all of Fouad's claims against Defendant Souraya Abelson ("Souraya"). See Order on Stipulation (ECF No. 135). The following claims remain pending:

- Rick and Akram's counterclaims against Fouad;
- Rick and Akram's third party claims against Donia Daou ("Donia") and Ziad Daou ("Ziad").

See Order (ECF No. 121) at 1.

Defendants move for $49,637.45 in attorney's fees pursuant to Nevada Revised Statutes § 18.010(2)(b), Federal Rule of Civil Procedure 54(d)(2), and Local Rule 54-16. Defendants contend they incurred a total of $99,274.90 in attorney's fees from November 2011, to March 23, 2014. Defendants' counsel from November 2011 through April 2012 was Jeffrey R. Albregts of Santoro, Driggs, Walch, Kearney, Holley & Thompson ("Santoro") who billed $20,077.75 in attorney's fees. Order (ECF No. 55); Defs.' Mot. for Award of Att'y Fees and Costs Not Taxable Pursuant to LR 54-1 through 54-15 ["Defs.' Mot."] (ECF No. 123), Ex. F. In March 2012, Philip T. Varricchio of the Varricchio Law Firm ("Varricchio") substituted for Santoro as Defendants' counsel, and Defendants incurred $79,197.15 in attorney's fees from Varricchio between March 2012 and March 23, 2014. Defs.' Mot. at 9, Ex. G. Defendants submitted a summary of billings by Santoro and Varricchio in support of their Motion. Defs.' Mot., Ex. F-Ex. H.

Defendants seek one-half of all fees, costs, and expenses, arguing Fouad's claims brought against them were baseless. Defendants argue Fouad knew his claims against Defendants were

without merit, but nonetheless continued to pursue the suit against Defendants. According to Defendants, Fouad had two years to establish his claims, yet did not provide any evidence in support of his claims against Defendants, resulting in the Court granting summary judgment in Defendants' favor.

Defendants also argue that Fouad's claims were brought or maintained to harass Defendants. Defendants assert that Fouad's claims sought to obtain approval for Fouad's conversion of two real properties in Lebanon and $70,000 Rick gave to Fouad. Defendants further contend that Fouad intended to attack Defendants, who are his family members, by creating "chaos, in-fighting, loss of face and reputation, and religious integrity" in naming multiple family members to the suit. Defs.' Mot. at 2, 10.

Defendants concede that the billings for $99,274.90 in attorney's fees include Rick and Akram's counterclaims against Fouad, Rick and Akram's third party claims against Donia and Ziad, and defense of Fouad's claims against Souraya, which have since been dismissed but were pending at the time the motion was filed. Defendants maintain that it is difficult to apportion the fees between their defense against Fouad's claims and their prosecution of counterclaims and third party claims, except for a few specific tasks related to the briefing of motions. Defendants therefore propose an apportionment of one-half of all incurred attorney's fees.

Defendants also move for $2,015.53 in costs, which is one-half of all nontaxable costs billed. Defendants contend that they incurred a combined total of $4,031.05 in nontaxable costs from Santoro and Varricchio. Given that the costs billed by Santoro and Varricchio include Rick and Akram's pending counterclaims against Fouad, pending third party claims against Donia and Ziad, and Fouad's claims against Souraya that were pending at the time of the filing of the motion, as well as the difficulty of apportioning those costs, Defendants propose an apportionment of one-half of nontaxable costs.

Fouad responds that Defendants offer no evidence to support a finding that Fouad's claims against Defendants were unreasonable or brought to harass Defendants. Fouad argues that Defendants' use of the Court's summary judgment Orders to show that Fouad's claims were brought unreasonably or to harass is insufficient. Fouad further argues that if his claims were

1  unreasonable or brought to harass Defendants, Defendants would have brought dispositive

2  motions earlier, rather than participating in the suit until the completion of discovery. Fouad also

3  contends Defendants do not provide a fair estimate of attorney's fees and costs by seeking a one-

4  half apportionment and that Defendants should instead itemize the charges specific to defending

5  against Fouad's claims.

6

7      **III.    LEGAL STANDARD**

8          Although state law governs whether a party is entitled to attorney's fees, federal law

9  dictates the procedure for requesting attorney's fees. Carnes v. Zamani, 488 F.3d 1057, 1059 (9th

10  Cir. 2007). Nevada law permits an award of attorney's fees to the prevailing party where the

11  opposing party brought or maintained a claim "without reasonable ground[s] or to harass the

12  prevailing party." Nev. Rev. Stat. § 18.010(2)(b). "[A] claim is frivolous or groundless if there is

13  no credible evidence to support it." Rodriguez v. Primadonna Co., LLC, 216 P.3d 793, 800 (Nev.

14  2009). The Court must liberally construe § 18.010(2)(b) in favor of awarding attorney's fees.

15  Nev. Rev. Stat. § 18.010(2)(b). Whether to award fees is within the Court's discretion.

16  Rodriguez, 216 P.3d at 800.

17          To determine whether attorney's fees should be awarded pursuant to § 18.010(2)(b), the

18  Court must "inquire into the actual circumstances of the case, rather than a hypothetical set of

19  facts favoring plaintiff's averments." Baldonado v. Wynn Las Vegas, LLC, 194 P.3d 96, 106-07

20  (Nev. 2008) (quotation omitted). In cases interpreting the statute governing attorney's fees, the

21  Supreme Court of Nevada has considered such factors as the complexity and uncertainty of the

22  legal issues presented, as well as whether the issue is one of first impression, in deciding whether

23  a claim was brought or maintained with reasonable grounds. In Baldonado, the Supreme Court of

24  Nevada referenced the complexity and unsettled nature of the legal issues presented in finding

25  that the district court did not abuse its discretion in determining that appellants' arguments were

26  brought with reasonable grounds, even though appellants' claims were unsuccessful on the

27  merits. Id. at 107; see also Rodriguez, 216 P.3d at 801 (denying defendant's motion for

28  attorney's fees because the plaintiff's civil action presented a novel question of Nevada law). If

1    there are several claims at issue, and the court finds that some claims are groundless while others

2    are not, attorney's fees should be allocated between the grounded and groundless claims.

3    Bergmann v. Boyce, 856 P.2d 560, 563 (Nev. 1993). The court may exercise its discretion in

4    determining the amount to award for defense against groundless claims. Id.

5            The mere fact that a claim failed to survive summary judgment, absent other evidence, is

6    not sufficient to prove the claims were brought without reasonable grounds or to harass. Bower

7    v. Harrah's Laughlin, Inc., 215 P.3d 709, 726 (Nev. 2009), modified on other grounds by Garcia

8    v. Prudential Ins. Co. of Am., 293 P.3d 869 (Nev. 2013). Relatedly, the fact that a plaintiff's

9    complaint survives a motion to dismiss is irrelevant as to whether the claims had a reasonable

10   basis, because the standard applied to a motion to dismiss differs from the standard applied to a

11   post-judgment motion for attorney's fees. Bergmann, 856 P.2d at 563.

12

13   **IV.    DISCUSSION**

14           The Court, in its discretion, will award attorney's fees incurred in defending Fouad's

15   breach of contract, unjust enrichment, fraud in the inducement, fraud, breach of the implied

16   covenant of good faith and fair dealing, and civil conspiracy claims against Defendants because

17   Fouad failed to provide credible evidence to support these claims during discovery or in support

18   of his opposition to Defendants' summary judgment motions. Additionally, Fouad does not

19   explain why he brought and maintained these claims. As the Court is awarding attorney's fees

20   for defense against Fouad's claims because they were brought and maintained without

21   reasonable grounds, the Court will not address whether Fouad's claims were brought to harass

22   Defendants.

23

24           **a. Awarding of Attorneys' Fees**

25                   **1. *Contract Claims (Counts One and Five)***

26           Fouad provided no credible evidence to support his breach of contract and breach of the

27   implied covenant of good faith and fair dealing claims against Maysoun, Najwas, and Akram.

28   During discovery, Fouad admitted he had no contract relating to real estate with Maysoun or

with Akram. Defs.' Mot. Summ. J. (ECF No. 84), Ex. F at 8; Id., Ex. G at 3-4. Fouad also admitted he had "no basis to support [his] claim that Maysoun . . . breached any contract with [Fouad]." Id., Ex. F at 8-9. Fouad also did not provide evidence of an agreement between Fouad and either Najwas or Akram that would support Fouad's contract-based claims against them. In opposing Defendants' Motion, Fouad does not explain why these claims are not groundless.

Additionally, Fouad provided no credible evidence to support his breach of contract claim against Rick. It is undisputed that Rick and Fouad entered into an agreement wherein Fouad would provide funds to Rick for the purpose of investing in Nevada real estate. However, Fouad failed to present any evidence that Rick breached the contract. In Fouad's opposition to Rick's summary judgment motion, Fouad argued Rick breached the contract between Rick and Fouad when Rick put Nevada property in Rick's name, rather than in Fouad's name. Opp'n to Def. Rick Abelson's Mot. Summ. J. (ECF No. 94) ["Opp'n to Def. Rick's Mot. Summ. J."], at 5-6. However, Fouad presented no evidence that the contract required Rick to title the property in Fouad's name. Rather, Defendants presented evidence that Fouad was satisfied that Rick titled each Nevada property in Rick's name during the first several years of the agreement. Order (ECF No. 120) at 6. Rick also presented evidence that Fouad gave Rick power of attorney granting Rick broad powers to invest in real estate on Fouad's behalf including to "generally . . . act and deal with respect to such real property as fully and effectually as [Fouad] could . . . ." Def. Riad ("Rick") Abelson's Mot. Summ. J. (ECF No. 90) ["Def. Rick's Mot. Summ. J."], Ex. D. Fouad also failed to present any evidence that he suffered damages as a result of any alleged breach. Although Fouad argued that he was unable to seek professional advice about whether to sell the properties because of fluctuations in the market, Fouad presented no evidence that he was barred from seeking professional advice because titles to the Nevada properties were not in Fouad's name.

Likewise, Fouad presented no evidence that Rick breached the implied covenant of good faith and fair dealing. According to Fouad, the fact that Rick did not title the Nevada properties in Fouad's name implicitly demonstrates that Rick did not act in good faith. However, Rick presented evidence that Fouad was satisfied for a number of years with Rick titling property in

Rick's name while giving Fouad contractual rights in the properties. Rick also presented evidence that Fouad retains interests in all properties. Furthermore, Fouad also did not present any evidence that he was damaged as a result of the alleged breach. Therefore, Fouad presented no evidence that Rick did not act in good faith by not titling Nevada property in Fouad's name.

Additionally, Fouad argued that Rick breached the implied covenant of good faith and fair dealing because Rick deceived Fouad into believing Fouad had to be physically present in the United States or be a United States citizen before the property could be transferred to Fouad's name. Fouad failed to provide any credible evidence that Rick made these representations. Fouad presented only unauthenticated and/or hearsay emails that did not show that Rick made the alleged misrepresentations. Because Fouad presented no evidence during discovery, at summary judgment, or in opposing the current Motion to support Fouad's breach of contract and breach of the implied covenant of good faith and fair dealing claims against Defendants, the Court will award attorney's fees to Defendants for the defense of these claims.

### 2. Unjust enrichment (Count Two)

Fouad provided no evidence to support Fouad's unjust enrichment claims against Maysoun, Najwas, and Akram. In response to Maysoun's request for admissions, Fouad admitted that he never provided money to Maysoun to purchase real estate in Nevada or for any other reason. Defs.' Mot. Summ. J., Ex. F. at 3, 4. Fouad provided no evidence that another person gave Fouad's money to Maysoun for Maysoun to hold or to purchase real estate in Nevada, and when asked if Maysoun owed any money to Fouad at his deposition, Fouad testified "no." Defs.' Mot. Summ. J., Ex. D at 42.

Fouad transferred money into a joint account held by Fouad and Rick, and on some occasions, Fouad transferred money into an account held by Najwas that Najwas later transferred to Rick's account. Id. at 27, 47. However, Fouad presented no evidence that Najwas retained a benefit from the transfer of Fouad's funds into Rick's account. When asked at Fouad's deposition if Najwas owed Fouad any money, Fouad answered, "I don't know," and did not testify that Najwas was indebted to Fouad. Id. at 40-41. Further, at Fouad's deposition, Fouad failed to identify that Akram owed Fouad any money other than a loan unrelated to real estate in

1    Nevada. Id. at 41.

2         Likewise, Fouad presented no evidence for his unjust enrichment claim against Rick.

3    Fouad argued Rick used the Nevada properties titled in Rick's name to qualify for a home loan

4    and expand Rick's portfolio. However, Fouad failed to present evidence that titling properties in

5    Rick's name for which Fouad had an ownership interest in fact helped Rick qualify for a home

6    loan or expand Rick's portfolio. Given that Fouad provided no evidence that Defendants retained

7    a benefit which in equity and good conscience belonged to Fouad, the Court therefore will award

8    attorney's fees for Fouad's unjust enrichment claims against Defendants.

9                        ***3. Fraud Claims (Counts Three and Four)***

10        Fouad provided no evidence to support his fraud and fraud in the inducement claims

11   against Maysoun, Najwas, and Akram. At his deposition, Fouad admitted that he "had no

12   conversations with Maysoun Fletcher regarding [his] purchase of or investment in real estate in

13   Nevada between the years 2000 to 2010." Defs.' Mot. Summ. J., Ex. F at 2. Fouad conceded that

14   Maysoun never made representations to Fouad regarding real estate in Nevada or Rick's

15   expertise in real estate, nor did Fouad rely on statements from Maysoun to purchase real estate in

16   Nevada. Id. at 4, 10; id., Ex. D at 42; id., Ex. E at 26. Fouad also admitted he had no basis to

17   support his claim that Maysoun "tricked" Fouad into transferring money. Id. at 9.

18        Similarly, Fouad admitted that Najwas never made representations to Fouad about Rick's

19   skill or expertise in real estate. Id., Ex. E, at 26. Fouad presented only three unauthenticated

20   emails containing hearsay, none of which supported a fraud-based claim against Najwas. Order

21   (ECF No. 117) at 6-7.

22        Likewise, Fouad admitted that Akram did not make representations to Fouad about the

23   Nevada properties underlying this suit. Defs.' Mot. Summ. J., Ex. G, at 3. Fouad also admitted

24   that he "had no communication with Akram H. Abolhosen regarding investments in Nevada,"

25   and Fouad "never sought investment advice from [Akram] regarding real estate in Nevada." Id.

26   at 2.

27        Similarly, Fouad presented no evidence that Rick made any misrepresentations to Fouad

28   upon which Fouad relied to his detriment. Fouad testified that Rick's representation that he was

investing in Nevada real estate in 2004 was true. Def. Rick's Mot. Summ. J., Ex. E. at 24-25. Fouad also testified that he had no information as to whether Rick's representation in 2006 that Rick was making money on real estate investments was true, and he failed to present any evidence that the statement was untrue. Id. at 27-29. Fouad asserted that Rick failed to inform Fouad about various lawsuits against Rick; however, all lawsuits except one postdate the last transfer of funds from Fouad to Rick. Opp'n to Def. Rick's Mot. Summ. J., Exs. 4-8. Fouad provided no evidence that this omission amounted to fraud. Fouad presented emails between Fouad and Rick to show that Rick gave false excuses as to why the Nevada properties could not be titled in Fouad's name, or in the alternative, that the properties could be transferred into Fouad's name only if he came to Nevada. Opp'n to Def. Rick's Mot. Summ. J., Ex. 5-6. However, the emails are unauthenticated and Fouad provided no credible evidence that any of the statements in the emails was untrue, nor did Fouad present any evidence that he relied on any of the statements to his detriment. Because Fouad presented no credible evidence that any Defendants made any misrepresentations to him regarding Nevada real estate, or that Fouad relied on the misrepresentations, the Court will award attorney's fees for Fouad's fraud and fraud in the inducement claims against Defendants.

### 4. Civil Conspiracy

Lastly, Fouad presented no credible evidence to support his claim that Maysoun, Najwas, or Akram acted in concert with anyone to harm Fouad resulting in damage to Fouad. Fouad attempted to inculpate Najwas as a co-conspirator with Rick by presenting an unauthenticated email containing hearsay which does not mention the subject of Najwas's alleged statement. Opp'n to Defs.' Mot. Summ. J. (ECF No. 92), Ex. 7. The alleged statement also fails to corroborate any other credible evidence to support Fouad's civil conspiracy claim against Najwas. In addition, Fouad did not present any credible evidence to show that Maysoun or Akram conspired to harm Fouad. Fouad also failed to provide evidence that Rick conspired with anyone resulting in damage to Fouad. As civil conspiracy is a derivative claim, and the Court found no credible evidence to support Fouad's independent claims or the dependent civil conspiracy claims against Defendants, the Court will award attorney's fees for Fouad's civil

1    conspiracy claims against Defendants.

2

3        **b. Apportionment**

4        Pursuant to Federal Rule of Civil Procedure 54(d)(2)(B), a motion for attorney's fees

5    must be: (1) filed within fourteen days of entry of judgment; (2) specify the judgment and legal

6    authority entitling the movant to fees; (3) state the amount sought or provide a fair estimate of it;

7    and (4) disclose "if the court so orders," the terms of any fee agreement. The moving party must

8    follow local rules. Fed. R. Civ. P. 54(d)(2)(D).

9        Local Rule 54-16(b) requires a motion for attorney's fees to include a "reasonable

10   itemization and description of the work performed." The motion also must provide a brief

11   summary of twelve factors bearing on whether the fee amount requested is reasonable: (1) the

12   results obtained and amount involved; (2) the time and labor required; (3) the novelty and

13   difficulty of the questions involved; (4) the skill needed to perform the legal services properly;

14   (5) whether the attorney was precluded from other employment due to accepting the case; (6) the

15   customary fee; (7) whether the fee is fixed or contingent; (8) time limitations imposed by the

16   client or other circumstances; (9) the experience, reputation, and ability of the attorney; (10) the

17   undesirability of the case, if any; (11) the nature and length of the professional relationship with

18   the client; and (12) awards in similar cases. LR 54-16(b)(3). An attorney responsible for the

19   billings in the case must provide an affidavit with the motion to authenticate the information in

20   the motion and attest that the fees and costs sought are reasonable. LR 54-16(c). Failing to

21   provide this information, as well as the information listed in LR 54-16(b), "constitutes a consent

22   to the denial of the motion." LR 54-16(d). The opposing party must identify the specific fees

23   disputed and "state with reasonable particularity the basis for such opposition." LR 54-16(e).

24       Defendants seek an apportionment of one-half of all attorney's fees equating to

25   $49,637.45. Defendants assert that their requested fees are reasonable because the issues

26   presented in the suit were complex and novel, the amount involved in the suit is over one million

27   dollars, and Defendants successfully obtained summary judgment. Defendants provide billing

28   invoices and Varricchio provided an affidavit to show the time and labor required for the case.

1    Defs.' Mot., Ex. F-I. Additionally, Defendants point out that their counsel represented multiple

2    clients as part of Fouad's lawsuit against Defendants, and the suit involved citizens and residents

3    of multiple countries and encompassed money and land located outside of the United States.

4           Defendants further argue the fee request is reasonable because of the experience,

5    reputation, and ability of the Defendants' counsel. Defendants contend that the requested fees are

6    reasonable because Varricchio has experience representing non-resident clients, which provided

7    skills, cultural understanding, and knowledge that benefited Defendants in this case. Varricchio

8    has been licensed to practice law in Nevada for thirty-three years, and has practiced largely in the

9    field of civil litigation. Defs.' Mot., Ex. I at ¶¶ 5-6.  According   to   Defendants,   the   time

10   Defendants' counsel devoted to the suit prevented counsel from providing legal services to other

11   clients. Additionally, the fact that Defendants substituted Varricchio in place of Santoro in April

12   2012 imposed additional time limitations on Varricchio due to pending motions and deadlines

13   that required expeditious attorney work. Defendants argue that the lawsuit was potentially

14   undesirable for representation because it involved individuals in multiple countries with varied

15   ages and varied English skill levels, real property located outside of the United States, and

16   potential issues of foreign law.

17          Defendants argue the requested rates of $350 per hour for attorney work and $125 per

18   hour for paralegal time are reasonable because Varricchio has customarily charged this amount

19   for the past five years. Id. ¶ 4. Defendants' attorney's fees are fixed, not contingent. Defendants

20   also provide that the nature and length of the professional relationship between Defendants and

21   Varricchio was over two years. Fouad does not dispute the rate sought by Defendants.

22          The billings submitted in support of Defendants' Motion itemize and describe

23   Defendants' counsel's work. However, the majority of the entries do not identify fees incurred

24   by each individual client, even though one client, Souraya, is not moving for fees. Nevertheless,

25   under the actual circumstances of this case as to the claims relevant to this Motion, the Court

26   finds that the vast majority of the work performed by Defendants' counsel would have inured to

27   the benefit of most or all Defendants, including Souraya (the non-moving Defendant), as the

28   issues presented by Fouad's claims against Souraya are similar to those presented by the claims

against Najwas, Maysoun, and Akram.[1] Because much of the fees were incurred in the common defense of Defendants, apportioning fees between each Defendant would be difficult. After review of the billing entries, the Court in its discretion finds that a one-half apportionment is reasonable in light of the shared claims and similarity of facts between Defendants.

### c. Costs

As to costs, the prevailing party is entitled to nontaxable costs and expenses unless a federal statute or court order provides otherwise. Fed. R. Civ. P. 54(d)(1); LR 54-1. The movant must itemize "all costs sought to be charged as part of the fee award and not otherwise taxable pursuant to LR 54-1 through 54-15." LR 54-16(b)(2).

Defendants seek apportionment of the total nontaxable costs of $4,031.05.  These costs include costs associated with Rick and Akram's pending counterclaims and third party claims as well as costs for Fouad's claims against Souraya, which were pending at the time of the filing of Defendants' motion. Instead of delineating costs associated with the Court's rulings in favor of Defendants, Defendants request one-half of all costs as a reasonable apportionment.

The Court finds that awarding one-half of all costs, approximately $2,015.53, is a reasonable apportionment.  As with fees, Defendants' costs were incurred in defending against Fouad's claims, which were brought against multiple Defendants with similar allegations. Because of the common facts and defenses raised by the Defendants, apportioning costs between each Defendant would be difficult. The Court therefore finds in its discretion that an apportionment of one-half of all costs is reasonable.

### d. Summary

The Court will award attorney's fees to Defendants on the basis that Fouad's claims against Defendants were groundless. The Court finds one-half of all attorney's fees as submitted to the Court is a reasonable apportionment for the work performed on behalf of the moving

---

[1] Further, in their stipulation dismissing Fouad's claims against Souraya, the parties agreed that Souraya "is similarly situated as other named Defendants" and "at best had a secondary role in the Nevada real estate transactions . . . ." Stipulation and Order (ECF No. 125).

Defendants as to the relevant claims. Similarly, the Court will award one-half of all costs as submitted to the Court as a reasonable apportionment for the costs incurred on behalf of the moving Defendants as to the relevant claims. The Court therefore will award to Defendants $49,637.45 in attorney's fees and $2,015.53 in costs.

## V.    CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Attorney's Fees and Non-Taxable Costs (ECF No. 123) is **GRANTED**.   The Defendants are awarded $49,637.45 in attorney's fees and $2,015.53 in costs.

**DATED** this 22nd day of October, 2014.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**